Lewis N. Stoddard, ISB No. 7766
ALDRIDGE PITE, LLP
13125 W. Persimmon Lane, Suite 150
Boise, ID 83713
Telephone: (619) 326-2404
Fax: (858) 726-6254
lstoddard@aldridgepite.com

Attorney for Chapter 7 Trustee

UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

| | |
|---|---|
| In Re:<br><br>KA INVESTMENTS, INC.<br><br>      Debtor<br><br>___<br><br>NOAH HILLEN, as Chapter 7 Trustee of the estate of KA Investments, Inc.,<br><br>  Plaintiff<br><br>vs.<br><br>ROBERTA LEATHAM, an individual; and John Doe 1-10.<br><br>    Defendant. | Chapter 7<br><br>Case No. 17-00495-TLM<br><br>Adv. No. _____<br><br>**COMPLAINT** |

  COMES NOW, Noah Hillen, as Chapter 7 Trustee ("Trustee") of the consolidated estate of debtor KA Investments, Inc. and non-debtor Rodney D. Allen (collectively the "Debtor"), by and through his attorney of record, Lewis N. Stoddard and alleges as follows:

**NATURE OF COMPLAINT**

  **1.)** This Complaint seeks to avoid and recover from Defendants Roberta Leatham ("Leatham"), or from any other person or entity for whose benefit the transfers were made, all

**COMPLAINT - 1**

fraudulent transfers of property, and to or for the benefit of Leatham, from an account owned by the Debtors during the four year period prior to the filing of the Debtor's bankruptcy petition pursuant to 11 U.S.C. § 544, 547(b), 550, and/or applicable state law.

## JURISDICTION, VENUE AND PARTIES

2.) Roberta Leatham ("Leatham"), is the wife of Rodney D. Allen and is believed to be a resident of Boise, Ada County, Idaho, residing at 1726 Broxon St., Boise, ID which upon information and belief, Leatham purchased prior to her marriage to Rod Allen and claimed to be her sole and separate property.

3.) Noah Hillen is the chapter 7 trustee ("Trustee") in the bankruptcy case of KA Investments, Inc. ("Debtor"), Case No. 17-00495-TLM filed in the U.S. Bankruptcy Court for the District of Idaho (the "Court").

4.) Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1334 and 157, and Federal Rule of Bankruptcy Procedure 7001, et seq., and the standard order of reference applicable in this District in that this action arises in and relates to the Involuntary Chapter 7 Bankruptcy Case involving KA Investments, Inc., pursuant to an Order for Relief on May 24, 2017, as Bankruptcy Case No. 17-00495-TLM.

5.) This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (H) and (O) and to the extent that it is determined to be a non-core proceeding that is otherwise related to this bankruptcy case, the non-core matters, if any, are so inextricably linked with core matters that this Court's exercise of jurisdiction is proper.

6.) The Trustee expressly consents to this Court's entry of final decisions, orders, and judgments in this matter.

7.) Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**COMPLAINT - 2**

## GENERAL ALLEGATIONS

8.) KA Investments, Inc., is a corporation organized under the laws of the State of Idaho since January 25, 2013.

9.) Rod Allen a/k/a Rodney Allen ("Allen") is the Debtor's principal.

10.) On April 25, 2017 (the "Petition Date") an involuntary petition was filed against KA Investments, Inc.

11.) On April 28, 2017, Trustee was appointed as the interim Chapter 7 trustee for the bankruptcy estate of KA Investments, Inc., pending adjudication of an involuntary bankruptcy petition.

12.) On May 24, 2017, an Order for Relief in an Involuntary Case under chapter 7 of the Bankruptcy Code was entered.

13.) On July 13, 2018, the non-debtor estate of Allen was substantively consolidated with the Debtor KA Investments, Inc., *nunc pro tunc* to April 25, 2017 (hereinafter collectively referred to as "Debtor").

**A. The KA Investments Scheme**

14.) Upon information and belief and to the best of the Trustee's knowledge, Allen either individually, through a d/b/a KA Investments and/or KA Investments, Inc., solicited funds from investors starting prior to 2010, though he did not form KA Investments, Inc., until January 25, 2013.

15.) Neither Rod Allen nor KA Investments, Inc., were licensed to sell securities or commodities and their securities were not registered as required by law.

16.) Debtor solicited funds from numerous investors for investment purposes promising returns of around 2% to 3% per month, or annual returns of 24% to 36% annually over

**COMPLAINT - 3**

the better part of the last decade.

17.)    Debtor advised investors that he would pool their money and "trade the market in stock options, S&P 500 futures, DOW futures, NASDAQ futures, oil, gold and the FX [foreign] market currency pairs."  Debtor also advised his investors that only a portion of their money would be invested at any given time and that all investments would be pulled out of the market at the end of each trading day, thereby avoiding large downturns in the market. Debtor advised investors that he would only take a commission based off of positive returns earned for investors.

18.)    Debtor's representations induced investors to invest with him because they expected above average profits from his trading activity which they were led to believe was low risk.  Moreover, where commissions were based upon achieving positive investment returns, investors believed that Debtor's commission structure was an incentive for Debtor to succeed.

19.)    Debtor did not inform investors that neither Allen, nor KA Investments, Inc. were registered or licensed to sell securities or commodities in the State of Idaho or elsewhere, nor did it advise investors that their funds would be co-mingled together with other investor funds, deposited into general checking accounts, that funds would be used for personal expenses in amounts unrelated to the commission structure promised, or that money from one investor would be used to pay other investors.

20.)    Ultimately, Debtor set up multiple bank accounts both in Allen's individual name as well as in the name of his d/b/a KA Investments, as a sole proprietorship.  Ultimately, a bank account was never set up for KA Investments, Inc.

21.)    When Debtor received investor funds they were deposited into one of two d/b/a KA Investment accounts where they were comingled all other investor funds.  Debtor took no steps and made no effort to maintain individualized investor accounts, to segregate investor

**COMPLAINT - 4**

funds, or to separately track investor funds or their performance.

22.) Once Investor funds were pooled, they were then freely transferred from the general business accounts to Rod Allen's personal checking accounts and/or savings accounts. From there only a portion of investor funds were deposited into two online trading platforms where Debtor incurred substantial losses.

23.) Investor funds not deposited into the online trading platforms were used by Rod Allen to pay for both his own personal expenses, his spouse's personal expenses, as well as marital expenses including but not limited to mortgage payments, car payments, credit card payments, household bills, ATM withdraws, and dining expenses.

24.) Similarly, investor funds that were left in the business checking accounts were also spent on similar personal expenses.

25.) Debtor prepared and distributed fake monthly statements which were distributed to investors reflecting the promised rates of return which, as a result, induced many investors to continue to invest additional monies, not to withdraw their investments, and/or to recommend Debtor's services to other potential investors. Beyond preparing and distributing fake monthly account statements to Investors, Debtor took no measures to separate or segregate investor funds, or to separately account for or track investor funds.

26.) During the four-year period preceding the Petition Date, the Debtor never had sufficient funds to repay investors on their principal investments and distributions to investors were dependent upon new investor money. Thus, Debtor's operations took on the characteristics of a Ponzi scheme, in which promised returns to old investors and distributions to old investors could only be satisfied by the flow of funds from the new investors. To that end, no corporate formalities were followed and funds were transferred, invested, spent, and/or distributed without

**COMPLAINT - 5**

consideration or documentation. Monthly statements and any investment distributions did not reflect actual value or actual investment performance, but were designed to comply with promised returns and investor expectations and by generating cash flow from new investors, the Debtor was able to create and promote the false impression of financial strength and trading knowledge notwithstanding that the Debtor was insolvent at the time.

27.) When investors wished to withdraw any portion of their investments, Debtor would pay them from whatever cash it had on hand, regardless of the source of those funds so as to perpetuate the illusion that investor money could be safely withdrawn at any time.

28.) According to a recent Verified Complaint filed by the State of Idaho, Department of Finance, Securities Bureau, by April 2017, Allen had gathered somewhere between $6,893,268.00 and $7,617,623.19 in investor funds and returned somewhere between $2,028,479.00 and $2,544,655.34 back to investors leaving between $4,864,789.00 and $5,072,967.85 unaccounted for. According to the Complaint, Allen converted nearly $2,900,000.00 of investor money for his own personal use.

**B.  The Transferor's Insolvency**

29.) The Debtor was insolvent using traditional accounting standards and tests.

30.) Debtor was also insolvent as a matter of law by virtue of the fraudulent scheme.

31.) At the time the Fraudulent Transfers were made, the Debtor, and in particular Allen and KA Investments, Inc., were insolvent at a fair valuation, such that the sum of their debts was greater than all of their property.

32.) At the time the Fraudulent Transfers were made, the Debtor, and in particular Allen and KA Investments, Inc., were engaged in a business or transaction for which any remaining property with the Debtor was an unreasonably small capital.

**COMPLAINT - 6**

### C. The Transfers to Defendants

33.) During the four year period before the Petition Date, that is from April 25, 2013 through and including April 25, 2017 (the "Four Year Period"), Debtor made one or more transfers of an interest in the Debtor's property to, or for the benefit of Defendant.

34.) Upon information and belief, Leatham invested minimal funds with the Debtor for investment purposes and received payments as a result of the investment. Specifically, Debtor's records indicate that Leatham invested approximately $3,336.73 which was deposited into Debtor's accounts as follows:

| Date of Transfer: | Deposit Amount: |
| --- | --- |
| April 18, 2012 | $1,234.00 |
| November 5, 2014 | $52.35 |
| November 25, 2014 | $52.35 |
| September 24, 2015 | $1,885.83 |
| April 11, 2016 | $112.20 |

35.) In the 90 days preceding the Bankruptcy filing in this matter, Debtor's records indicate that Leatham received multiple payments in the total amount of $28,000.00, as follows, all of which were cashed by Leatham:

| Date of Transfer: | Payment Amount: |
| --- | --- |
| March 2, 2017 | $2,000.00 |
| March 17, 2017 | $2,000.00 |
| March 27, 2017 | $2,000.00 |
| April 12, 2017 | $2,000.00 |
| April 17, 2017 | $20,000.00 |

36.) In addition to the foregoing payments, Debtor's records indicate that Leatham also received direct payments from Debtor in the total amount of $57,400.00 during the 4 years preceding the Petition Date as follows:

| Date of Transfer: | Payment Amount: |
| --- | --- |

**COMPLAINT - 7**

| | |
|---|---|
| February 10, 2016 | $2,000.00 |
| February 18, 2016 | $2,000.00 |
| March 14, 2016 | $2,000.00 |
| March 14, 2016 | $1,000.00 |
| March 28, 2016 | $1,200.00 |
| April 13, 2016 | $2,000.00 |
| April 20, 2016 | $1,000.00 |
| April 28, 2016 | $2,000.00 |
| May 19, 2016 | $1,000.00 |
| May 19, 2016 | $1,000.00 |
| June 6, 2016 | $2,000.00 |
| June 15, 2016 | $2,000.00 |
| June 21, 2016 | $1,500.00 |
| June 22, 2016 | $2,000.00 |
| July 8, 2016 | $2,000.00 |
| July 26, 2016 | $3,000.00 |
| August 16, 2016 | $1,500.00 |
| August 29, 2016 | $2,000.00 |
| September 29, 2016 | $2,500.00 |
| October 7, 2016 | $2,000.00 |
| October 24, 2016 | $1,200.00 |
| November 2, 2016 | $2,000.00 |
| November 17, 2016 | $2,000.00 |
| December 2, 2016 | $2,000.00 |
| December 14, 2016 | $3,500.00 |
| December 21, 2016 | $1,000.00 |
| December 22, 2016 | $2,000.00 |
| January 4, 2017 | $2,000.00 |
| January 18, 2017 | $2,500.00 |
| February 2, 2017 | $2,000.00 |
| February 14, 2017 | $1,500.00 |

37.)   In addition to the foregoing, upon information and belief, during the Four Year Period, Leatham also utilized Debtor's funds for her own personal purchases and/or funds were used for her sole benefit as follows:

| | |
|---|---|
| Nerium | $2,241.85 |
| Graeber & Company | $2,972.61 |
| Smith Horras | $2,650.00 |

38.)   In addition, upon information and belief, Leatham also received the benefit and value of various improvements made to her sole and separate property at 1726 S. Broxon St.,

**COMPLAINT - 8**

Boise, Idaho, which were paid directly by Debtor including but not limited to the following:

| Date of Transfer: | Payee: | Payment Amount: |
|---|---|---|
| October 29, 2015 | All American Fencing | $3,000.00 |
| November 4, 2015 | All American Fencing | $3,000.00 |
| November 13, 2015 | All American Fencing | $1,700.00 |
| November 18, 2015 | All American Fencing | $1,700.00 |
| June 16, 2016 | Leatham Landscape | $2,000.00 |
| June 30, 2016 | Leatham Landscape | $5,000.00 |
| July 8, 2016 | Leatham Landscape | $7,000.00 |
| July 14, 2016 | Leatham Landscape | $7,000.00 |
| August 1, 2016 | Leatham Landscape | $17,000.00 |
| August 8, 2016 | Leatham Landscape | $7,000.00 |
| September 23, 2016 | Letaham Landscape | $11,300.00 |

39.)    Upon information and belief, Leatham, as the spouse of Allen, was acquainted with and/or close friends with many of the investors that invested with Debtor. As such, Debtor's direct payments to Leatham and/or supporting a certain above average lifestyle was an integral part of furthering Debtor's Ponzi scheme so as to give Leatham and other investors the appearance that Debtor's trading activities were translating into financial success for both Debtor and the investors.

40.)    Upon information and belief, Leatham knew or should have known that Allen was not an investor by trade or by education, and was not licensed to sell securities.

41.)    On January 2, 2018, Trustee made a demand upon Leatham for return of just the monetary payments she received in the total amount of $85,400.00; however, Leatham rejected Trustee's demand.

42.)    As is set forth above, Plaintiff conservatively estimates that during the Four Year Period, Leatham received a total of $85,400.00 in direct payments from the Debtor and another $73,564.46 in payments made for her sole benefit for a total of $158,964.46 ("The Four Year Transfers").

**COMPLAINT - 9**

## COUNT I - 11 U.S.C. §§ 547(b), 550(a), 551
### Preferential Transfer/Recovery/Preservation

43.) Trustee realleges and incorporates by reference all of the allegations set forth in above.

44.) Debtor's records indicate that Leatham invested approximately $3,336.73 with Debtor for the purpose of obtaining a return on the investment.

45.) Debtor's records show that from March 1, 2017 to April 17, 2017, Leatham received multiple checks totaling $28,000.00 (the "Transfer").

46.) At the time of the Transfer, the Debtor had an interest in the $28,000.00

47.) The Transfer was made for the benefit of the Leatham.

48.) At the time of the Transfer, Leatham was a creditor of the Debtor. Leatham as further evidenced by Leatham's proof of claim filed in the Bankruptcy action as Claim No. 79-1.

49.) The Transfer was made on account of an antecedent debt owed by the Debtor to Leatham prior to the Transfer.

50.) Debtor was insolvent at the time of the Transfer.

51.) The Transfer occurred within 90 days of the Petition Date.

52.) Debtor was presumed insolvent at the time of the Transfer, as the Transfer occurred within 90 days of the Petition Date.

53.) The Transfer allowed Leatham to receive more than she would have in a Chapter 7 liquidation had the Transfer not been made.

54.) Pursuant to 11 U.S.C. § 550(a)(1), Leatham was the initial transferee of the Transfer.

55.) Trustee may avoid the Transfer, recover funds transferred to Leatham and preserve the avoided and recovered Transfer for the benefit of the bankruptcy estate.

**COMPLAINT - 10**

# COUNT II
## AVOIDANCE AND RECOVERY OF THE FOUR YEAR TRANSFERS AS FRAUDULENT TRANSFERS PURSUANT TO IDAHO CODE ANN. §§ 55-913, 55-916, 55-917 AND 11 U.S.C. §§ 544, 548(a)(1)(A), 550, AND 551

56.)    The Plaintiff restates and incorporates herein by reference the allegations contained in the paragraphs above.

57.)    The Debtor was insolvent as that term is defined under Idaho Code Ann. § 55-911 during the Four Year Period.

58.)    The Four Year Transfers were made with the actual intent to hinder, delay, or defraud creditors and where Debtor operated a Ponzi Scheme during the Four Year Period, fraudulent Intent is presumed.

59.)    The Four Year Transfers were to an insider/relative, for insufficient consideration, and at a time The Debtor was insolvent as that term is defined under Idaho Code Ann. § 55-912 during the Four Year Period.

60.)    The Four Year Transfers were made while the Debtor was engaged, or about to engage, in a business or a transaction for which the Debtor's remaining assets were unreasonably small in relation to its business or transactions.

61.)    The Debtor reasonably should have believed that it would incur debts beyond its ability to pay as they became due as a result of the Four Year Transfers.

62.)    As Allen's spouse, the Four Year Transfers were to and for the benefit of an insider/relative, and through the transfer Debtor was able to retain possession or control of the property after transfer.

63.)    The transfer was not disclosed to Debtor's other creditors and/or concealed.

64.)    An unsecured creditor existed at the time of or after the Four Year Transfers who holds a claim that is allowable under Bankruptcy Code section 502 and who, under non-

**COMPLAINT - 11**

bankruptcy law, could have avoided the Four Year Transfers, at least in part.

65.) The Four Year Transfers were fraudulent transfers in violation of Idaho Code § 55-913(b) as to present and future creditors.

66.) Defendants are either the initial transferee of the Four Year Transfers or the immediate or mediate transferee of such initial transferee or the person for whose benefit the Four Year Transfers were made.

67.) As of the date hereof, Defendant has not returned any of the Four Year Transfers to the Debtor's estate.

68.) By reason of the foregoing, Plaintiff is entitled to a judgment pursuant to Idaho Code § 55-913(a), 55-916, and 55-917, and Bankruptcy Code §§ 544(b), 550 and 551: (i) avoiding and preserving the Four Year Transfers; (ii) directing that the Four Year Transfers be set aside; and (iii) recovering the Four Year Transfers, or the value thereof, from Defendant(s) for he benefit of the Debtors' estates.

## COUNT III
### AVOIDANCE AND RECOVERY OF THE FOUR YEAR TRANSFERS AS CONSTRUCTIVELY FRAUDULENT TRANSFERS PURSUANT TO IDAHO CODE ANN. §§ 55-913, 55-914, 55-916, AND 55-917 AND 11 U.S.C. §§ 544(B), 548(a)(1)(B), 550, AND 551

69.) The Plaintiff restates and incorporates herein by reference the allegations contained in the paragraphs above.

70.) The Debtor was insolvent as that term is defined under Idaho Code Ann. § 55-912 during the Four Year Period.

71.) The Debtor received less than reasonably equivalent value in exchange for the Four Year Transfers.

72.) The Four Year Transfers were made while the Debtor was engaged, or about to

**COMPLAINT - 12**

engage, in a business or a transaction for which the Debtor's remaining assets were unreasonably small in relation to its business or transactions.

73.)  The Debtor reasonably should have believed that it would incur debts beyond its ability to pay as they became due as a result of the Four Year Transfers.

74.)  As Allen's spouse, Leatham was an insider/relative at the time of the Four Year Transfers.

75.)  An unsecured creditor existed at the time of or after the Four Year Transfers who holds a claim that is allowable under Bankruptcy Code section 502 and who, under non-bankruptcy law, could have avoided the Four Year Transfers, at least in part.

76.)  The Four Year Transfers were fraudulent transfers in violation of Idaho Code § 55-913(b) as to present and future creditors.

77.)  Defendants are either the initial transferee of the Four Year Transfers or the immediate or mediate transferee of such initial transferee or the person for whose benefit the Four Year Transfers were made.

78.)  As of the date hereof, Defendant has not returned any of the Four Year Transfers to the Debtor's estate.

79.)  By reason of the foregoing, Plaintiff is entitled to a judgment pursuant to Idaho Code § 55-913(b), 55-916, and 55-917, and Bankruptcy Code §§ 544(b), 550 and 551: (i) avoiding and preserving the Four Year Transfers; (ii) directing that the Four Year Transfers be set aside; and (iii) recovering the Four Year Transfers, or the value thereof, from Defendant(s) for he benefit of the Debtors' estates.

## COUNT IV
## UNJUST ENRICHMENT

80.)  Plaintiff reasserts all of the allegations in the foregoing paragraphs of this

**COMPLAINT - 13**

Complaint as if more fully set forth herein.

81.) Defendant was enriched as a result of receiving the Four Year Transfers described in this Complaint by receiving something of value that belonged to Plaintiff.

82.) These enrichments violate equity and good conscience.

83.) These enrichments did not result from enforceable agreements between Plaintiff and Defendant.

84.) By reason of the foregoing, Defendant should be compelled by this Court to make restitution to Plaintiff in the amount of the Four Year Transfers.

## RESERVATION OF RIGHTS

85.) During the course of this adversary proceeding, Plaintiff may learn through discovery or otherwise of additional transfers made by the Debtor to Leatham, or for the benefit of Leatham that were unknown to Plaintiff as of the date of this Complaint (the "Additional Transfers").

86.) Plaintiff intends to avoid and recover all transfers made by the Debtor of an interest of the Debtors in property and to or for the benefit of Defendant or any other transferee. Plaintiff reserves its right to supplement and amend the allegations contained in this Complaint, including but not limited to, the right to (i) allege further information regarding the Four Year Transfers, (ii) allege Additional Transfers, (iii) make modifications of and/or revision to Defendants names(s), (iv) allege additional defendants, and/or (v) allege additional causes of action arising under sections 542, 544, 545, 547, 548 and 549 of the Bankruptcy Code (collectively, the "Amendments"), that may become known to Plaintiff at any time during this adversary proceeding through formal discovery or otherwise, and for the Amendments to relate back to this original Complaint. By reason of the foregoing, Defendant should be compelled by

**COMPLAINT - 14**

this Court to make restitution to Plaintiff in the amount of the Four Year Transfers.

87.) To the extent that Defendant has filed a proof of claim or have a claim listed on the Debtor's schedules as undisputed, liquidated, and not contingent, or have otherwise requested payment from the Debtor, or its estate, this Complaint is not intended to be, nor should it be construed as, a waiver of Plaintiff's right to object to such Claims for any reason including, but not limited to section 502 of the Bankruptcy Code, and all such rights are expressly reserved. Notwithstanding this reservation of rights, certain relief pursuant to section 502(d) of the Bankruptcy Code is sought by this Complaint.

## PRAYER FOR RELIEF

WHEREFORE, the Trustee respectfully requests that this Court grant judgment as follows:

A. Judgment under Count I that the Transfers constituted a preferential transfer of an interest of the Debtor in property that may be avoided by the Trustee pursuant to 11 U.S.C. § 547(b).

B. Judgment under Count I that Trustee may recover the value of the Transferred funds from Defendants pursuant to 11 U.S.C. § 550(a).

C. Judgment under Count I that Trustee may preserve the Transfer for the benefit of the bankruptcy estate pursuant to 11 U.S.C. § 551.

D. Judgment under Counts II, III, and IV declaring that the Four Year Transfers are avoided and set aside as fraudulent transfers pursuant to section 544 and 548 of the Bankruptcy Code and applicable state law;

**COMPLAINT - 15**

E.     Directing and ordering that any transfers avoided pursuant to sections 544 and 548 and applicable state law be preserved for the benefit of the Debtor's estate pursuant to 551 of the Bankruptcy Code;

F.     Directing and ordering that each Defendant, or any immediate or mediate transferee of each Defendant, turnover to Plaintiff the full amount of or value of the Four Year Transfer received by such Defendant, or any immediate or mediate transferee of such Defendant pursuant to section 550 of the Bankruptcy Code;

G.     Awarding Judgment for costs for bringing the instant action, including costs allowed under LBR 7054.1 and pre-judgment and post-judgment interest;

H.     Compelling each Defendant to make restitution to the Plaintiff in the amount that they were unjustly enriched by the Four Year Transfers; and

I.     Any and all other relief the Court deems appropriate.

Dated this April 23, 2019.

        /s/ Lewis N. Stoddard
LEWIS N. STODDARD
Attorney for Trustee

**COMPLAINT - 16**